IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Joel Curtis Smith, Jr. | ) | |
| | ) | Civil No. 2:09-CV-1650-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Michael Cooper and Brian Kale, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed a complaint alleging that defendants, two Folly Beach Public Safety Department (FBPSD) officers, violated his civil rights under 42 U.S.C. §§ 1983 and 1988, as well as the Fourth and Fourteenth Amendments. Plaintiff alleges the same four causes of action against each defendant. Defendants argue that they did not violate plaintiff's civil rights and that they are entitled to qualified immunity. For the reasons set forth below, the court grants defendants' motion.

**I.  BACKGROUND**

On January 26, 2007, an employee at the Crab Shack restaurant located at 26 Center Street, Folly Beach, South Carolina, called the FBPSD to report that a white male, who was possibly intoxicated, had parked a silver sport utility vehicle (SUV) in front of Folly Beach City Hall. All of the SUV's doors were reportedly open, and the stereo was "blasting." Mot. Summ. J. 1-2; Mot. Summ. J. Ex. 7 at 2. Defendant Brian Kale, an

1

FBPSD officer, responded to the call.  When he arrived, he did not see a silver SUV parked in front of Folly Beach City Hall; however, he saw an SUV matching the same description parked on Center Street, facing in the wrong direction.  All of the SUV's windows were open.  Kale then issued a ticket for the parking violation.

After Kale issued the parking ticket, a Crab Shack employee approached him and said that the SUV's owner was inside the restaurant "being annoying."  Mot. Summ. J. 2; Mot. Summ. J. Ex. 7 at 3.  Kale entered the restaurant and found the owner of the SUV, who was identified as plaintiff.  Kale instructed plaintiff to get someone who was not intoxicated to move his SUV and close all of the windows to secure the vehicle's contents.  Plaintiff went outside with Kale, and Kale informed him of the parking ticket.  Kale reported that plaintiff became confrontational and then went back inside the restaurant.  Kale assumed that plaintiff went to find someone to move his car; however, after a few minutes, one of the restaurant's bartenders came outside and told Kale that she wanted plaintiff to leave the restaurant.  Kale went back inside the restaurant and once again located plaintiff.  When Kale asked if plaintiff attempted to find someone to move his car, plaintiff made a smart remark to Kale, stating that "it takes longer than 15 seconds to find someone sober to move the vehicle."  Mot. Summ. J. Ex. 7 at 3.  Kale informed plaintiff that it would only take fifteen seconds for him to have the vehicle towed, and plaintiff became more verbal and stated that Kale was threatening him.  At that point, Kale informed plaintiff that he would tow the vehicle, and Kale walked outside.  Plaintiff followed Kale outside and began making unintelligible statements to Kale.  Kale called for back-up and a tow truck.  Shortly thereafter, Officers Stanton and

Cooper (Kale's co-defendant) arrived. Stanton and Cooper spoke with plaintiff and encouraged him to take a taxi home because he appeared to be intoxicated. Plaintiff refused to cooperate with the officers and was "verbal" towards them.[1] Id. As a result, Cooper placed plaintiff in handcuffs and arrested him for disorderly conduct by intoxication, in violation of South Carolina Code of Laws § 16-17-530. Defendants then transported plaintiff to an FBPSD holding cell temporarily, "while Cooper prepared to transport him to the Charleston County Detention Center [(CCDC)]." Mot. Summ. J. 4.

Before being transported to CCDC, Cooper once again handcuffed plaintiff and placed him in the back seat of a police car. This is the handcuffing episode giving rise to plaintiff's § 1983 claims.[2] According to plaintiff's deposition, "[t]his time [Cooper] handcuffed me rather snugly." Mot. Summ. J. Ex. 6 at 106. Plaintiff claimed that he had difficulty getting into the police car, so he laid down on the seat to "schooch" himself into the back seat. Id. at 108. Plaintiff claims that Cooper threatened to hog tie him if he did not sit back and face forward in the seat. When Cooper reached in to buckle plaintiff's seat belt, plaintiff alleges that "he took my right shoulder and made it more or less hit the back of the seat. At that time my handcuffs went kkkkkkk-kkkkkkk. And my shoulder went to the back of the seat. He said that's where I want you. Then he put the seat belt

---

[1] The dispatch call narrative, included in defendants' Exhibit 7, reflects that Kale gave plaintiff two opportunities to move his car prior to calling for a tow truck. One of the officers on scene also called a Yellow Cab for plaintiff prior to his arrest. Mot. Summ. J. Ex. 7 at 4.

[2] Plaintiff testified that when he was initially handcuffed, outside of the Crab Shack restaurant, "[t]hat was not the handcuffing that caused the injury . . . ." Mot. Summ. J. Ex. 6 at 101-02.

3

on me." Id.  As a result, plaintiff claims that he experienced pain in his arms and back and that the sound of the handcuffs tightening was "unbearable." Id. at 109.  Although plaintiff claims that Cooper shoved his "right shoulder into the back of the seat like I'd be facing properly if I was a little kid," he admitted that Cooper never hit him or caused him to fall. Id. at 109-10.  The Folly Beach City Attorney later nolle prossed the disorderly conduct by intoxication charge.

On June 22, 2009, plaintiff filed a complaint in this court.  Plaintiff alleges that "[d]uring the course of handcuffing Plaintiff and taking him into custody, Plaintiff suffered severe injuries." Compl. ¶13.  In his complaint, plaintiff alleges the same four causes of action against each defendant:  (1) a § 1983 Fourth Amendment claim for seizing plaintiff without reasonable suspicion, (2) a § 1983 Fourth Amendment claim for using excessive force while seizing plaintiff, (3) a § 1983 Fourth Amendment claim for arresting plaintiff without probable cause, and (4) a § 1983 First Amendment claim for arresting plaintiff after he exercised his free speech right to voice opposition "to an unlawful arrest." Compl. 4.  Although plaintiff alleges that defendants acted under color of state law in the course of their employment as police officers, plaintiff is suing them in their individual capacities, seeking compensatory and punitive damages.

On December 20, 2010, defendants filed the instant summary judgment motion. Defendants argue that they had probable cause to effect the arrest of plaintiff, therefore, he cannot claim that they violated the Fourth Amendment by seizing him without reasonable suspicion and arresting him without probable cause.  Defendants argue that plaintiff's First Amendment claim must fail because they had probable cause for his arrest

and he was not arrested based on the content of his speech. Defendants further argue that Cooper's actions in handcuffing plaintiff and placing him in the back seat of a police car did not constitute excessive force, and none of the medical records obtained by defendants show that plaintiff suffered any injuries as a result of Cooper's actions. Finally, defendants argue that they are entitled to qualified immunity for their actions.

On January 7, 2011, plaintiff filed a response in opposition. Plaintiff claims that a medical record, in which he informed a doctor that his wrists "remain as 'numb as they can be,'" demonstrates that defendants used unreasonable, excessive force when handcuffing plaintiff, thereby creating a genuine issue of material fact.[3] Resp. Opp'n Ex. 1. Citing Powell v. Texas, 392 U.S. 514, 540 n.1 (1968), plaintiff asserts that defendants had no probable cause to arrest him for public intoxication because defendants caused him to be in a public area, outside of the restaurant, where they arrested him. Plaintiff adds that the disposition of the charge, "while not controlling, is suggestive that probable cause was lacking for the charge." Resp. Opp'n 2. As a final assertion, plaintiff states that defendants are not entitled to qualified immunity because "[w]hen the Defendants arrested Plaintiff without probable cause and then used excessive force in handcuffing him, they knew, or should have known, that their actions violated the law and that this 'unlawfulness was apparent.' Anderson v. Creighton, 483 U.S. 635, 640 (1987)." Resp. Opp'n 3.

---

[3] Although not relevant to the resolution of this case, the court questions whether a medical record, which is hearsay, containing plaintiff's statement, which is hearsay within hearsay, can create a genuine issue of material fact, but this issue is for another day.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).  Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor.  Anderson, 477 U.S. at 255.  However, a mere "scintilla" of evidence will not preclude summary judgment.  Id. at 252.

## III.  DISCUSSION

Title 42 U.S.C. § 1983 provides that an individual may file a civil action for a deprivation of his or her civil rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

6

injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

### A.     Plaintiff's False Arrest, Unreasonable Seizure, and First Amendment Claims and Qualified Immunity

The case of Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002), presents facts and legal issues similar to those in the instant case.  In Brown, the defendant "brought a 42 U.S.C. § 1983 action alleging false arrest[4] and use of excessive force in violation of the Fourth Amendment during her arrest for violating the City of Myrtle Beach's disorderly conduct ordinance."  Id. at 365.  In the instant case, in addition to the same two constitutional violations alleged by Brown, plaintiff alleges that defendants violated the Fourth Amendment by seizing plaintiff without reasonable suspicion and the First Amendment by interfering with his right to protest his unlawful arrest.

The Fourth Circuit's analytical approach in Brown is instructive.  The court first analyzed whether the defendant was entitled to qualified immunity on Brown's false arrest charge.  The court then analyzed Brown's excessive force claim.  Mirroring the Fourth Circuit's analysis,[5] the first issue this court will address is whether defendants are

---

[4]Brown claimed that her arrest was not supported by probable cause.

[5]The court acknowledges that at the time Brown was decided, Saucier v. Katz, 533 U.S. 194 (2001), mandated that parties follow a specific, sequential two-step approach when analyzing qualified immunity cases.  The Fourth Circuit followed this approach.  In 2009, the United States Supreme Court decided Pearson v. Callahan, 129 S. Ct. 808 (2009), and overruled Saucier to the extent that district courts and the circuit courts of appeal are no longer required to follow the specific sequence of steps mandated in Saucier.  The lower courts may now use their discretion in choosing which of the two qualified immunity test prongs to analyze first.  Due to the facts and circumstances of the case before the court, logic dictates that this court should follow the analytical sequence used in Brown.

entitled to qualified immunity with regard to plaintiff's arrest for disorderly conduct by intoxication. If the answer to this question is "yes," the court need not analyze plaintiff's reasonable suspicion and First Amendment claims.

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)]. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

Pearson, 129 S. Ct. at 815.

> In [Saucier, 533 U.S. at 194], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. [Id. at 201]. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. [Anderson, 483 U.S. at 640].

Id. at 815-16. The Pearson Court held that

> while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Id. at 818. Following the Fourth Circuit's approach in Brown, the court should first determine whether the facts alleged by plaintiff "make out a violation of a constitutional right." Id. at 816.

> "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

8

> [Saucier, 533 U.S. at 201]. Because, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

Brown, 278 F.3d at 367. In other words, if defendants did not violate a constitutional right, there is no need to proceed to the second prong of the qualified immunity test.

Plaintiff claims that defendants did not have probable cause to arrest him for committing the offense of disorderly conduct by intoxication; therefore, they violated his Fourth Amendment right to be free from unreasonable seizure. "Public disorderly conduct" is codified at South Carolina Code of Laws § 16-17-530:

> Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church or (c) while under the influence or feigning to be under the influence of intoxicating liquor, without just cause or excuse, discharge any gun, pistol or other firearm while upon or within fifty yards of any public road or highway, except upon his own premises, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days.

A police officer determines whether probable cause exists based on the "totality of the circumstances known to the officer at the time of the arrest." Brown, 278 F.3d at 367 (citing United States v. Garcia, 848 F.2d 58, 59-60 (4th Cir. 1988)). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Id. at 367-68 (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). "Two factors govern the determination of probable cause in any situation: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed

9

by that conduct.'" Id. at 368 (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

Plaintiff must allege facts that make it "unjustifiable for a reasonable officer to conclude" that he violated the disorderly conduct statute to demonstrate that defendants did not have probable cause to arrest him. Brown, 278 F.3d at 368. Plaintiff has not done so. Plaintiff apparently does not dispute the facts found in the FBPSD incident report documenting plaintiff's arrest. All of the factual allegations found in plaintiff's complaint are contained in the FBPSD incident report; however, plaintiff's complaint conveniently omits many additional relevant details in the report that support a finding of probable cause for his arrest. The only other facts alleged by plaintiff are found in his response in opposition to defendants' motion:

> Instead of issuing the citation and leaving, the police went inside the restaurant where the Plaintiff was located and demanded his car be moved. The police then brought the Plaintiff outside where he was finally arrested for public intoxication. Since it was the police bringing the Plaintiff outside, his being outside cannot then be used as probable cause to support an arrest for public intoxication. Powell v. Texas, 392 U.S. 514, 510 fn.1 (1968).

Resp. Opp'n 2. The first statement above clearly contradicts a factual allegation in plaintiff's complaint. In paragraph nine, plaintiff states that "Defendant Kale *requested* Plaintiff find someone to move the vehicle and secure the vehicle, as its windows were open," not that Kale "demanded" that plaintiff move his car. Compl. ¶ 9 (emphasis added). And while plaintiff asserts that defendants somehow brought him outside, neither plaintiff's factual allegations nor his deposition testimony reflect that either defendant removed him from the restaurant and took him outside. Regardless, plaintiff's reliance

10

on Powell is misplaced and his argument flawed because plaintiff was, in fact, already in a public place when he was inside the Crab Shack restaurant.⁶  Plaintiff's reference to Powell is actually an incorrect citation to Justice Black's concurring opinion in the case, which, in turn, cites Martin v. State, 17 So. 2d 427, 427 (Ala. Ct. App. 1944).  In Martin, the defendant was removed from his *home*, placed on a public highway, and charged with violating a public intoxication statute.  Id. (emphasis added).  His conviction for that offense was reversed by the Court of Appeals of Alabama.  Id.  A restaurant open to the public is simply not analogous to a private residence.

Moreover, the facts found in the FBPSD incident report and dispatch call narrative indicate that a reasonable officer would have had more than adequate evidence that plaintiff was in violation of § 16-17-530, and thus, probable cause for his arrest. Defendants were dispatched to Center Street after receiving a call from a Crab Shack employee.  After locating the SUV described in the call and issuing a parking ticket, a Crab Shack employee approached defendant Kale and stated that plaintiff, the owner of the SUV, was in the restaurant "being annoying."  Mot. Summ. J. Ex. 7 at 3.  Plaintiff appeared to be intoxicated to Kale, and Kale gave plaintiff two opportunities to have someone move his SUV, so that it would not be towed.  Instead of taking advantage of the first opportunity to have someone move his car, plaintiff followed Kale outside,

---

⁶In Rogers v. Pendleton, 249 F.3d 279, 293 (4th Cir. 2001), the Fourth Circuit cited the majority view that a "public place" is "'a place where the public has a right to go and to be,' excluding 'a private residence where a social party is given.'" (Quoting Commonwealth v. Osterhoudt, Crim. No. 6620, 1990 WL 751049, at *1 (Va. Cir. 1990)). During the summary judgment motion hearing, defendant conceded that the Crab Shack restaurant could be considered a public place.

11

became "confrontational," and went back inside the restaurant. Id. A female bartender at the restaurant then came outside and told Kale that the restaurant employees wanted plaintiff to leave. After approaching plaintiff again, plaintiff made a "smart" remark to Kale, stating that he was having difficulty finding someone sober to move his SUV. Id. When Kale informed plaintiff that he would have the SUV towed, plaintiff walked outside and made a series of unintelligible statements to Kale. When defendant Cooper and Officer Stanton arrived, they called a taxi for plaintiff because of his suspected intoxicated state, but plaintiff refused and continued to be "uncooperative and verbal towards the officers." Id. It was at this time, after plaintiff was given several opportunities to resolve the situation peacefully, that defendants placed plaintiff under arrest.[7]

    As a result of plaintiff's failure to allege facts that would make it unjustifiable for a reasonable officer to conclude that he violated § 16-17-530, along with a multitude of facts in the FBPSD report which are ignored but not disputed by plaintiff, the court finds that probable cause existed for plaintiff's arrest. Consequently, defendants did not violate a known constitutional right, and they are entitled to qualified immunity regarding plaintiff's false arrest claims. It is unnecessary for the court to reach the second prong of the qualify immunity test. In addition, plaintiff's reasonable suspicion and First Amendment claims against each defendant become moot. "'Reasonable suspicion' is a

---

[7] When describing the circumstances of his arrest, plaintiff stated that Cooper "pulled me off the street like I was a little kid getting ready to get run over by a car. He told me I was going to jail and the car is being impounded." Mot. Summ. J. Ex. 6 at 101. Subsequently, Cooper arrested and handcuffed plaintiff.

less demanding standard than probable cause"; therefore, if defendants had probable cause to arrest plaintiff, they certainly had reasonable suspicion to seize him. Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). As defendants had probable cause to arrest plaintiff, the arrest was lawful, thereby mooting plaintiff's claims that each defendant violated his First Amendment right to protest his "unlawful" arrest. It should also be noted that plaintiff failed to allege any facts indicating that defendants arrested him as a result of the content of his speech. In fact, while plaintiff and Kale were in the Crab Shack restaurant, Kale ignored a smart remark made by plaintiff and left the restaurant to call for a tow truck. And prior to his arrest, plaintiff made a series of statements to Kale which Kale could not understand. The facts indicate that defendants arrested plaintiff not for the content of his speech, but based on his disruptive conduct both inside the restaurant, as reported by Crab Shack employees, and outside on Center Street.

### B.    Plaintiff's Excessive Force Claims

The court must now analyze plaintiff's excessive force claims against each defendant. At the outset, plaintiff's excessive force claim against Kale must fail because there is no allegation that he ever touched plaintiff. See Brown, 278 F.3d at 369 ("Since there is no allegation that Officer Gilmore ever touched Brown, there can be no excessive force claim made against him."). At the hearing for the instant motion, defendant agreed that no basis exists for an excessive force claim against Kale. This leaves plaintiff's excessive force claim against defendant Cooper.

"The Fourth Amendment's right to be free from unreasonable seizures includes the right to be free from seizures carried out with excessive force." Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005) (citing Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2004)).

> To determine whether the force was excessive, we undertake the reasonableness inquiry described in [Graham v. Connor, 490 U.S. 386 (1989)]. "As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." [Id. at 397].
>
> In assessing whether an officer's actions were objectively reasonable, "we weigh 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" [Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Graham, 490 U.S. at 396)]. The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by "the amount of force employed to affect the seizure." Howerton v. Fletcher, 213 F.3d 171, 173 (4th Cir. 2000). "The extent of the plaintiff's injuries is also a relevant consideration." Buchanan, 325 F.3d at 527. Several factors are considered in assessing the governmental interests at stake, including the "severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officer [ ] or others, and whether he . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight." [Graham, 490 U.S. at 396].

Turmon, 405 F.3d at 207. This inquiry requires that the court consider whether the facts, in the light most favorable to plaintiff, demonstrate that defendants violated a constitutional right. Brown, 278 F.3d at 369. The "'core judicial inquiry'" for stating an excessive force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 7 (1992)).

Defendant Cooper allegedly used excessive force when he handcuffed and secured plaintiff in his police car for transport to CCDC. Plaintiff asserts that Cooper shoved his shoulder back in the seat, which caused plaintiff's handcuffs to tighten, resulting in plaintiff's alleged injuries. In his complaint, plaintiff alleges that as a result of defendant Cooper's use of excessive force, he "suffered severe injuries," including "emotional and physical harm." Compl. ¶¶ 13, 19. In his response in opposition, plaintiff alleged that he "has had to go through several medical visits and procedures to try to correct the injuries that occurred as a result of the arrest. Even months after the arrest, Plaintiff's wrists allegedly 'remained as numb as they can be.'" Resp. Opp'n 1. In his deposition, plaintiff testified that his "arms hurt" as a result of Cooper's actions, that his back was "discomforted like steel being gouged into it," and that the tightening of the handcuffs was "unbearable." Mot. Summ. J. Ex. 7 at 109.

Plaintiff's allegations do not support a claim of excessive force. Defendant Cooper's actions in both handcuffing plaintiff and securing him in the police car are objectively reasonable considering that plaintiff was not seated properly in the car and could not be safely secured with a seat belt. The degree of force used was slight—plaintiff testified that the amount of force used was similar to that of a parent pushing a child back in his or her car seat. Other than giving plaintiff "one good daggone shove," plaintiff testified that Cooper never hit him. Id. at 110. Plaintiff provides no evidence indicating that the force used by Cooper was anything other than "a good faith effort to maintain or restore discipline." Wilkins, 130 S. Ct. At 1178. Accordingly, plaintiff's excessive force claim against Cooper should fail.

Furthermore, plaintiff did not suffer any significant injuries as a result of Cooper's actions. Just as in the Brown case, plaintiff "alleges no injury of any magnitude." 278 F.3d at 369. The allegations in plaintiff's complaint are vague and inconclusive, and the exhibit attached to his response in opposition reflects that on May 18, 2007, plaintiff reported to Dr. David L. Albenberg that his wrists were as "numb as they can be." Resp. Opp'n Ex. 1. Dr. Albenberg did not diagnose his wrists as being numb; he simply noted what plaintiff told him and the fact that plaintiff had a follow-up appointment scheduled with a "Dr. Hughes" on the following Monday. Id. In his deposition, plaintiff described the force used by Cooper as "[t]aking his hand and shoving my right shoulder into the back of the seat like I'd be facing properly if I was a little kid being put into a carrying seat for a kid." Mot. Summ. J. Ex. 7 at 110. "[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." Brown, 278 F.3d at 369. In Carter v. Morris, 164, F.3d 215, 219 (4th Cir. 1999), the Fourth Circuit held that

> [a]lthough Carter's complaint also alleges that she was subjected to excessive force, she submits only minimal evidence in support of that claim. In fact, Carter's basis for her excessive force claim—that her handcuffs were too tight and that an officer pushed her legs as she got into the police car—is so insubstantial that it cannot as a matter of law support her claim under either the Fourth Amendment . . . or the Fourteenth.

(Internal citations omitted).

Defendants present a variety of records which show that plaintiff did not suffer any significant injuries as a result of defendants' alleged excessive force. Plaintiff's CCDC intake report, which was completed on the date of his arrest, shows that plaintiff

answered "no" (or "N") when asked if he had "[o]bvious pain, bleeding, or other symptoms suggesting need for Emergency Medical Services," or any "[v]isible signs of injury or illness requiring immediate treatment/care." Mot. Summ. J. Ex. 8 at 2. After reviewing plaintiff's medical records, Dr. Kathy S. Bolus reported that plaintiff's wrist injuries were unsubstantiated. "[A]fter numerous diagnostic tests were conducted, including an EMG, no deficit was found, and at least one physician has noted that he was unable to identify any radicular component." Mot. Summ. J. Ex. 9 at 1. With regard to plaintiff's alleged back injury, Dr. Bolus concluded that "his back injury appears to be degenerative in nature, to include spondylosis." Id. A memorandum prepared by Dr. Thomas Hughes, Tidewater Neurology, on March 7, 2007, notes the following impression: "Possible injury to superficial radial nerve and dorsal cutaneous nerves at the wrists after handcuffs, but with normal conductions, this injury is most likely minimal and should expect good recovery." Id. at 9. Test results on the same date indicate the same impression: "With normal conductions, this would be a minimal level injury and should expect full recovery." Id. at 12.

On August 7, 2007, Dr. Hughes noted that plaintiff "[s]ymptomatically continues to have symptoms of possible superficial radial and dorsal cutaneous nerve injury of the handcuffs though limited findings to support this on EMG. Symptoms are no worse. No functional loss. Back to working without difficulty." Id. at 10. Another employment-related record, dated January 23, 2007, three days prior to his arrest by defendants, documented the fact that plaintiff claimed that he had a "shoulder cuff" injury and "needed to see an orthopedic surgeon." Mot. Summ. J. Ex. 12 at 2. In sum, plaintiff is

unable to demonstrate either unreasonable force by Cooper, or any significant resulting injuries.

## IV.  CONCLUSION

For the reasons above, the court **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**April 12, 2011**
**Charleston, South Carolina**